Thomas W. Moore, Appellee, v. Monarch Distributing Company, Appellant.

Opinion filed March 2, 1943.

KARNS & BANDY, of East St. Louis, for appellant.

PHILIP G. LISTEMAN and ROBERT RUTLEDGE, both of East St. Louis, for appellee; WHITNEL, BROWNING, LISTEMAN & WALKER, of East St. Louis, of counsel.

Mr. Justice Bristow delivered the opinion of the court.

Thomas W. Moore was the organizer of the defendant corporation known as the Monarch Distributing Company, which was created to engage in the wholesale liquor business in East St. Louis, Illinois. Moore was the owner of two hundred forty-eight shares of its stock. The only other two shares outstanding were in the names of Henry Keefe and Robert Spotz. Moore was the president of the corporation and Spotz was its secretary.

Lee Miller and Joseph S. Meyer of Springfield, Illinois, became interested in the purchase of this business. Meyer made an inventory of the corporation's assets and on July 1, 1939, Moore resigned as director and president, and Lee Miller was elected as his successor, Meyer was elected vice president and Spotz continued as secretary until sometime in October of that year.

Moore then entered into an agreement with the corporation agreeing to dispose of his interest which was represented by the two hundred forty-eight shares of its capital stock for the sum of two thousand dollars. This was paid by the corporation executing and delivering four promissory notes in the sum of five hundred dollars each, one of which became due January 1st, the second February 1st, the third March 1st, and the fourth April 1st of 1940. Whereupon, Moore turned his two hundred forty-eight shares of stock back into the treasury of the company.

About the 1st of January, 1940, Moore made an effort to collect his first note. He would call on the telephone. The answer usually was that Mr. Meyer was out of the city and could not be reached. When Moore would drive by the place of business and see Meyer's car on the outside he would drop in and request payment, but he received only promises. This experience was repeated in his undertaking to collect

the note which was due on February 1st. Then on the night of February 19, 1940, Moore drove by the Monarch Distributing Company's warehouse and observed a light on and considerable activity in the basement where some five to seven hundred cases of liquor had been stored. He returned early the following morning and discovered that they were loading a truck with gin and whiskey; a further investigation disclosed that practically the entire stock was loaded out. He then proceeded to the front office to interview Meyer who explained that he was transferring the stock of merchandise to a warehouse in St. Louis, Missouri, and being in another State he could settle more easily with his creditors. He assured Mr. Moore most faithfully, however, that he need not fear about the payment of his notes.

Moore, notwithstanding these solemn assurances, did have fear, so he proceeded to inquire about the status of the bank account of the corporation. He found a substantial balance there and immediately filed his affidavit for an attachment against the defendant and alleged that the defendant was indebted to him and that he was about to fraudulently conceal, assign or otherwise dispose of its property so as to hinder and delay its creditors. An attachment writ was issued and served on the bank, but in the interim Meyer had succeeded in withdrawing a substantial portion of the account. On March 9, 1940, Moore, who we will now call plaintiff, filed his complaint predicated upon the four judgment notes in question. A judgment by confession was thereupon entered. On March 14, 1940, the defendant filed an answer together with certain affirmative defenses, also a traverse to the affidavit for attachment and demanded a jury trial. On July 11, 1940, defendant filed several verified motions to set aside the aforesaid default judgment. The motions were supported by the affidavit of the now president, Joseph S. Meyer. He

stated therein that he could and would testify to all matters constituting those affirmative defenses. The trial court denied defendant's motion and upon appeal to this court this order was reversed (*Moore v. Monarch Distributing Co., 309 Ill. App. 339*).

Thereupon the case was reinstated in the trial court and the plaintiff filed a reply denying the affirmative defenses. These defenses were two in number, namely, number one being for want of consideration, and number two, want of authority in Lee Miller, then president, to execute and deliver the notes in question. The jury trial resulted in a verdict for the plaintiff in all issues. After overruling defendant's motion for new trial and judgment *non obstante veredicto* a judgment was rendered on the verdicts for the plaintiff and against the defendant. From this judgment this appeal developed.

To reverse the judgment defendant makes two contentions. The first is that the verdict is against the manifest weight of the evidence; the second, that the verdict was induced by certain inflammatory arguments made by plaintiff's attorney while addressing the jury.

That the corporation is not liable on the notes in question it is argued by the defendant that Lee Miller was actually the purchaser of the stock; that it was a transaction solely between Moore and Miller. In support of this contention the defendant produced as a witness Mr. Spotz who was then secretary, to attest the correctness of certain minutes of the corporation, where on July 1, 1940 a resolution was passed at a board meeting wherein it is stated that Moore sells his stock to Lee Miller. The record discloses that Spotz was regularly employed as a filling station attendant; that he was not a salaried secretary and spent no time in attending to the affairs of the corporation's business, except as minutes were presented to him to be signed. He did not remember positively

about anything but understood that such and such were true. He did not remember seeing the stock transferred to anyone. A careful reading of the transcript of his testimony reveals that he must have been a very unreliable and unconvincing witness. The defendant did not produce the stock records which would certainly have shown the true status of the transaction. The plaintiff on rebuttal denied the correctness of the minutes referred to herein.

Lee Miller was called as a witness on behalf of the defendant. He testified that on July 1, 1940 he acquired the two hundred forty-eight shares of stock in question, and quoting from his testimony—"I paid somebody for them; I did not pay the Monarch Distributing Company direct. I signed notes for Two Thousand Dollars to Thomas W. Moore. He has those notes. The notes he is suing on are the notes I had signed." Q. "That's the way you paid for your shares of stock, is it, you signed notes to Thomas W. Moore?" A. "I signed those notes." Later he said on cross examination, "Moore assigned his full two hundred forty-eight shares of stock to the corporation. It was in payment of these two hundred forty-eight shares that these four notes were drawn." It appears therein that Miller took nothing and surrendered nothing by virtue of this transaction. If there was a sale of stock from Moore to Miller no corporation meeting and resolution would have been necessary.

It is indeed strange and of more than passing significance that Meyer never appeared at the trial as a witness. His absence is not explained; it isn't even mentioned. It was on the strength of his affidavits that the right to this trial was had. He was the guiding force of the corporation's affairs. He, alone, could have explained when collection on the notes in question was sought from him, why he did not say in effect, "why, Mr. Moore, these are the obligations of Mr. Miller and not those of the corporation." Fur-

ther, it was he who could have explained when he was stealthily and in the darkness of night moving all of his assets to another state; why he said to Moore, "I will take care of you alright, I just want to be in a position to cheat my other creditors by having my merchandise transferred to another state."

The story of the defense is somewhat involved and the jury is to be complimented for arriving at a correct result notwithstanding the confusion that must have prevailed during the trial. Plaintiff's lawyer, in one of his arguments to the jury, made the remark that the defense in this case was "cooked up", and defendant complains bitterly that such error must have been the cause of the jury reaching the result that they did. The characterization certainly was not meant as any reflection upon the honesty of eminent counsel for defendant, but it fairly accurately brands the conduct of Meyer. The defense interposed herein appears to be a child of the same brain that conceived the plan to flee from the State of Illinois with his property to escape paying what he was honestly obligated to pay. We do not believe that the argument mentioned can be severely criticized. We know of no authority that condemns any argument that is based upon the evidence in the case, or that is based upon reasonable inferences that can be fairly deduced from the evidence.

We do not feel called upon in view of the foregoing facts to cite any authorities to justify our view that the judgment entered in this case is correct and should be affirmed.

*Judgment affirmed.*